In re AIR CRASH DISASTER AT DE-
TROIT METROPOLITAN AIRPORT
ON AUGUST 16, 1987.

MDL No. 742.

United States District Court,
E.D. Michigan.

Oct. 10, 1989.

See also, D.C., 737 F.Supp. 391.

Charles Brewer, Phoenix, Ariz., Stanley Chesley, Cincinnati, Ohio, Lee Kreindler, New York City, Gerald Lear, Thomas Meehan, Washington, D.C., Richard Schaden, Birmingham, Mich., for plaintiffs' Steering Committee.

Carroll E. Dubuc, Laxalt, Washington, Perito and Dubuc, Washington, D.C., for defendant, Northwest Airlines.

John J. Hennelly, Bryan, Cave, McPheeters & McRoberts, Los Angeles, Cal., Donald E. Shely, Dykema, Gossett, Spencer, Goodnow & Trigg, Detroit, Mich., for defendant, McDonnell Douglas.

## ORDER

JULIAN ABELE COOK, Jr., Chief Judge.

On August 22, 1989, the Plaintiffs' Steering Committee (PSC) moved to compel the attendance of agents and employees of the Defendants, Northwest Airlines, Inc. (Northwest) and McDonnell Douglas Corporation (MDC) during the liability trial in this cause.[1]

For the following reasons, this Court denies the PSC's request to compel the attendance of Northwest and MDC employees during the presentation of the Plaintiffs' case in chief during the liability trial.

### I

Federal Rule of Civil Procedure 45(e)(1), which relates to subpoenas for attendance at at hearing or trial, provides as follows:

---

1. In a supplemental pleading that was filed on September 21, 1989, the PSC identified the following Northwest and MDC employees whose requested attendance is the subject of this motion: Northwest employees Duane Edelman, Ben Lightfoot, and James Herrin, and MDC employees Steven Lund, Williams, Ralph Brumby, and Michael O'Conner. In an additional pleading that was submitted by the Warsaw Plaintiffs on the following day (September 22, 1989), the attendance of Norman Hug and Rodney Peters was also requested.

A subpoena requiring the attendance of a witness at a hearing or trial may be served at any place within the district, or at any place without the district that is within 100 miles of the place of the hearing or trial specified in the subpoena, or at a place within the state where a state statute or rule of court permits service of a subpoena issued by a state court of general jurisdiction sitting in the place where the district court is held. When a statute of the United States provides therefor, the court upon proper application and cause shown may authorize the service of a subpoena at any other place.

*Fed.R.Civ.P.* 45(e)(1).

Rule 45(e)(1) explicitly lists the geographic limitations on the authority of the federal district courts to compel the attendance of nonparty · witnesses at trial. These "[r]estrictions upon the reach of subpoenas are imposed to prevent undue inconvenience to witnesses." *Fed.R.Civ.P.* 45(e)(1) Advisory Committee's Notes on 1980 Amendment.

■ The PSC acknowledges that "[n]one of the [MDC] or Northwest witnesses are subject to the limited range of a federal court trial subpoena" under Federal Rule of Civil Procedure 45(e). PSC Motion at 2–3. Nevertheless, the PSC contends that this Court has the authority to compel the attendance of the desired witnesses pursuant to the terms of Local Rule 2(b), Federal

Rule of Evidence 611, Section 22.23 of the Manual for Complex Litigation, and Michigan Court Rule 2.506(A)(1). Such an argument, however, ignores a well established doctrine concerning an obligation of this Court to apply federal rules of procedure in diversity actions.

## II

Congress possesses the power to promulgate rules concerning the practice and procedure in the federal courts and may delegate that authority to the United States Supreme Court or to other federal courts. *See Sibbach v. Wilson & Co.,* 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479 (1941); *see also Burlington Northern R.R. Co. v. Woods,* 480 U.S. 1, 107 S.Ct. 967, 969 n. 3, 94 L.Ed.2d 1 (1987); 28 U.S.C. §§ 2072–2074. In *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), the Supreme Court determined that a federal district court sitting in diversity must apply the federal rule of civil procedure which directly relates to a contested issue unless its application would violate the Enabling Act, 28 U.S.C. § 2072, or the United States Constitution. *See Johansen v. E.I. Du Pont de Nemours & Co.,* 810 F.2d 1377 (5th Cir.1987), *cert. denied,* 484 U.S. 849, 108 S.Ct. 148, 98 L.Ed.2d 104 (1988); *Olympic Sports Products, Inc. v. Universal Athletic Sales Co.,* 760 F.2d 910 (9th Cir.1985).[2]

---

**2.** This Court notes that *Erie* considerations cannot be ignored when conducting an examination of federal and state procedural rules under the *Hanna* test. *See Hanna,* 380 U.S. at 473, 85 S.Ct. at 1145. As stated by the Ninth Circuit Court of Appeals in *Olympic:*

A court should not ignore *Erie* principles when testing a federal rule under *Hanna.* In analyzing the clash between a state and a federal rule under *Erie* and [*Guaranty Trust Company v.*] *York,* [326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945)] however, a court should note that every procedural rule may, at some point in litigation, be outcome-determinative, for the failure to follow a court's procedural rules may result in the dismissal of a claim, defense, or entire lawsuit. Therefore, the court should not blindly follow *York* and ask if application of the federal rule will determine the outcome of the controversy. Rather, the court should look at the "twin aims of the *Erie* rule: discouragement of forum shopping and avoidance of inequitable

administration of the laws." *Hanna,* 380 U.S. at 468 [85 S.Ct. at 1142]. The proper query is whether the difference between the two rules would be relevant to plaintiff's initial choice of forum.

[Under the *Hanna* analysis,] if the federal rule is within the scope of constitutional power and the Rules Enabling Act, it applies unless the *Erie* considerations are so strong that they can justify interrupting the normal function of the federal court processes.

*Olympic,* 760 F.2d at 914–15 (citations omitted). The PSC did not address whether the application of Rule 45(e)(1) in this case is constitutional, authorized by the Enabling Act, or violative of *Erie* principles. However, even if a challenge was lodged on the basis of *Erie* considerations, this Court concludes that the application of the federal rule in question would not encourage forum shopping. It is not clear that the application of state law would provide the PSC with the relief which has been requested in this motion. *See infra* note 6. However, assuming that state

The PSC has not attempted to establish that Rule 45(e) is not procedural in nature or is unconstitutional. Hence, it does not satisfy the *Hanna* test.[3] Nevertheless, the PSC contends that this Court may disregard the provisions of Rule 45 and compel the attendance of the requested witnesses pursuant to its authority under Rule 611(a) of the Federal Rules of Evidence, which provides:

> The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarassment.

Thus, the PSC argues that, in order to effectively reconstruct the aircraft accident, it is "imperative" that "live witnesses" testify to the jury. In addition, the presentation of live testimony "will necessarily be more focused on the ultimate issues than would their written testimony through discovery depositions as it is read to a jury." PSC Brief at 3–4 (Aug. 22, 1989). For these reasons, the PSC believes that this Court should require the designated witnesses to appear at trial under the authority of Rule 611.

In further support of its position, the PSC cites Section 22.23 of the Manual for Complex Litigation, which provides, in part:

> Special problems may arise when counsel attempt to call adverse parties or their employees as witnesses. Of course, such persons can be called to testify if present at the trial, whether voluntarily or by reason of a subpoena under Rule 45. Arrangements may usually be made among counsel to have these persons present, if adequate notice is given, at the requested time without need for a subpoena or even if not subject to subpoena. Sometimes, however, a party is unwilling to make available employees who are beyond the subpoena powers of the court. Despite the substantial interference with the conduct of trial it may cause, this declination appears to be permissible under current rules if such persons will not be presented during any part of the trial. In some circumstances, however, courts have used their discretion under Fed.R.Evid. 611 to preclude parties who refuse to honor a reasonable request for production of a key witness subject to their control, and thereby force an opponent to use a deposition, from calling the witness to testify personally during their presentation of the evidence.

MANUAL ON COMPLEX LITIGATION (SECOND) § 22.23 (1985) (footnotes omitted).

This Court initially notes that the *Manual on Complex Litigation* does not sup-

---

law could empower this Court to subpoena the desired witnesses, the Plaintiffs, who filed in federal court, cannot be characterized as having attempted to manuever into federal court in order to avoid an unfavorable state law. In addition, while it may be argued that the Defendants removed those few cases from the state court in an effort to exploit the limitations of Rule 45(e)(1), this Court finds it highly unlikely that the removal in this multidistrict litigation was motivated by a desire to take advantage of the limited subpoena powers of the federal court. It is the view of this Court that forum shopping concerns are neutral in this case and, therefore, *Erie* considerations do not "justify interrupting the normal function of the federal court processes."

**3.** Although the PSC does not expressly contend that Rule 45(e)(1) is unconstitutional, it does represent that "attendance of live witnesses is necessary for a full and fair jury trial in this case." PSC Brief at 3 (Aug. 22, 1989). To the extent that this constitutes a challenge to the constitutionality of Rule 45(e)(1), this Court rejects any such contention.

Such a conclusory statement is not sufficient to establish the existence of any constitutional infirmity that would be inherent in Rule 45(e)(1). The PSC may present its case in chief through live testimony of its own witnesses, deposition or video testimony of the adverse parties witnesses, and has the opportunity to cross examine any witness who is offered by Northwest or MDC. In this regard, the PSC has failed to articulate how its litigative position differs in any respect from that of any other litigant who desires to present the testimony of witnesses outside the subpoena powers of this Court. In conclusion, this Court finds that the PSC has not presented a colorable argument in support of its contention that Rule 45(e)(1) is unconstitutional.

port the PSC's request for relief in the instant motion. Contrary to the contention by the PSC, the *Manual* does not suggest that a federal district court expand its Rule 45(e)(1) subpoena powers in those cases in which the defendant refuses to produce employees to testify during the plaintiff's case in chief. Instead it recommends that the court preclude the defendants from presenting such witnesses to testify during their case in chief. Therefore, the PSC's reliance on the *Manual* is misguided.

Moreover, the PSC has not presented, and this Court did not discover, any case law that would support the requested expansion of the subpoena authority of this court under Rule 45(e)(1).[4] While the physical absence of the desired witnesses may or may not be detrimental to the PSC's ability to present its case to the jury, this Court, by means of a judicial fiat, cannot ignore a Congressional mandate which is supported by constitutional authority. The Fourth Circuit Court of Appeals stated in *In re Guthrie*, 733 F.2d 634, 637 (4th Cir. 1984) (citation omitted):

> [A] nonparty witness outside the state in which the district court sits, and not within 100–mile bulge, may not be compelled to attend a hearing or trial, and the only remedy available to litigants, if

the witness will not attend voluntarily, is to take his deposition pursuant to 45(d). *See Jaynes v. Jaynes*, 496 F.2d 9 (2nd Cir.1974); *GFI Computer Industries v. Fry*, 476 F.2d 1 (5th Cir.1973); *Hecht v. Don Mowry Flexo Parts, Inc.*, 111 F.R.D. 6 (N.D.Ill.1986); *Steel, Inc. v. Atchison, Topeka & Santa Fe R.R.*, 41 F.R.D. 337 (D.Kan.1967). In fact, the use of deposition testimony at trial as the sole means of adducing testimony from a witness outside the subpoena power of the Court is further contemplated by Rule 32(a)(3)(B) & (D), which provides:

> The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: ... (b) that the witness is at a greater distance than 100 miles from the place of trial or hearing, ... or (D) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena.

Therefore, this Court concludes that the PSC has failed to satisfy the minimum requisites for the displacement of the limited subpoena powers of this Court as defined in Rule 45(e)(1). Absent a showing that the provisions of Rule 45(e)(1) violate the Rules Enabling Act or the United States Constitution, this Court cannot simply suspend a federal rule of civil procedure and unilater-

---

**4.** The PSC maintains that the unpublished decision of Judge Wilhoit in *In re Beverly Hills Fire Litigation*, MDL No. 77–79 (E.D.Ky. Dec. 7, 1984), supports its position that Rule 611 authorizes a federal court to expand its subpoena powers beyond that provided in Rule 45(e)(1). However, this Court disagrees with the PSC's interpretation of Judge Wilhoit's decision.

In *re Beverly Hills*, the defendants repeatedly failed to answer interrogatories and accurately disclose their witness lists despite the insistence by the court that they do so. Contrary to the PSC's representation, the court did not "order the defendant ... to produce its witnesses live at trial in the plaintiffs' case." PSC Brief at 4 (Aug. 22, 1989). Rather, as a sanction to rectify the defendants' discovery misconduct, the court invoked Rule 611 in order to compel the defendants to have all their listed witnesses available on the first day of trial. The court went on to suggest that "[a]ny defendant may refuse to make one of its listed witnesses available for the plaintiffs to call; but, only those witnesses that are made available for the plaintiffs to call will

be permitted to testify at all." *In re Beverly Hills*, MDL 77–79, at 6.

Therefore, contrary to the PSC's interpretation, *In re Beverly Hills* does not stand for the proposition that a federal court may expand its subpoena powers based on simple notions of equity to the parties. Instead, the *In re Beverly Hills* Court decided that when the defendants have conducted discovery in bad faith, the court may utilize Rule 611 and preclude them from introducing witnesses who are not available to testify during the plaintiff's case in chief because this

> is the fairest method of making sure the complete truth is told to the jury in this case and the least likely method of wasting time given that trial is so close and the plaintiffs cannot reasonably be expected to depose all the defendants' witnesses, whose identity and/or modification in testimony has been effectively withheld from the plaintiffs, due to the defendants' failure to timely make their witnesses known and properly answer interrogatories.

*Id.*

ally expand its subpoena powers.[5] Therefore, contrary to the PSC's contentions, neither the *Manual on Complex Litigation Second* nor Federal Rule of Evidence 611 provide this Court with authority to compel certain employees of Northwest and MDC to attend trial during the Plaintiffs' case in chief.

## III

■ The PSC also asserts that this Court has the authority to grant its request to compel the attendance of witnesses pursuant to Local Rule 2(b), which provides that "[a]ny Judge of this Court to whom a case is assigned may issue orders in that case governing matters of procedure not addressed by these Rules." This Rule, which was designed to clarify that judges in this judicial district can issue orders relating to matters that have not been addressed within the Local Rules, does not and cannot expand upon the subpoena powers of the district court under Rule 45(e). As a result, this Court rejects the PSC's claim that Local Rule 2(b) provides the authority upon which to order the attendance of the witnesses at issue.

## IV

■ Finally, the PSC, citing *Walker v. Armco Steel Corp.*, 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980), maintains that "since there is no Federal Rule of Civil Procedure sufficiently broad in scope to control this Procedural issue, the court may apply a state procedural rule under *Erie* principles." PSC Brief at 5 (Aug. 22, 1989). Accordingly, the PSC submits that the application of the forum's procedural rules, Michigan Court Rule 2.506, would permit this Court to order the attendance of the Northwest and MDC witnesses during the Plaintiffs' case in chief.

This Court recognizes that when a federal rule does not address the particular issue presented, the *Hanna* test should yield to the application of the *Erie* doctrine and a state rule of procedure may apply. For instance, the issue in *Walker* focused upon whether a state statute of limitations was satisfied by the mere filing of the complaint with the court or by service of the complaint on the defendant. Rule 3 of the Federal Rules of Civil Procedure ostensibly provided for the former, while the state law required the latter. In deciding that the law of the state, and not Rule 3, should apply, the *Walker* Court stated:

There is no indication that ... [Rule 3] was intended to toll a state statute of limitations, much less that it purported to displace state tolling rules for purpose of state statutes of limitations. In our view, in diversity actions Rule 3 governs the date from which various timing requirements of the federal rules begin to run, but does not affect state statute of limitations.

*Id.* at 750–51, 100 S.Ct. at 1985.

However, there should be no question that Rule 45(e)(1) specifically addresses the circumstances under which this Court may subpoena nonparty witnesses to appear at trial. The Rule explicitly establishes the geographic limits of valid subpoena service. In fact, the last sentence of Rule 45(e)(1) sets out the specific circumstance in which this Court can suspend the geographic limitations and serve "a subpoena at any other place." The scope of this subpoena power is explicit and unambiguous. Even though the PSC's request is not authorized by a federal rule of procedure, the federal rules of civil procedure are not silent on this issue.[6]

Therefore, this Court denies the PSC's motion to compel the attendance of Northwest and MDC employees at trial.

IT IS SO ORDERED.

---

5. MDC maintains that this Court may expand its subpoena powers inorder to redress abusive discovery tactics. *See* MDC Response at 5 n. 1 (Sept. 11, 1989). This Court takes no position on MDC's contention at this time.

6. The PSC has not clearly shown that the Michigan Court Rules would authorize a Michigan court to subpoena nonparty witnesses who are located outside that state. *See* Mich.Ct.Rule 2.506(G)(1) ("A subpoena may be served anywhere in Michigan....").